ADAM S. SIEFF (Cal. Bar #302030)
DAVIS WRIGHT TREMAINE LLP
350 S. Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel.: (213) 633-8618
adamsieff@dwt.com

ERIN E. MURPHY (*pro hac vice*)
JAMES Y. XI (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
ILAN J. POSNER (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
erin.murphy@clementmurphy.com

*Attorneys for Plaintiff X.AI LLC*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| X.AI LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>*Defendant*. | Case No.: 2:25-cv-12295-JGB-SSC<br>*Honorable Jesus G. Bernal*<br><br>**PLAINTIFF X.AI LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ACTION SEEKING STATEWIDE RELIEF**<br><br>Courtroom: 1<br>Date: February 23, 2026<br>Time: 9:00 a.m. |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    xAI Has Standing To Maintain This Pre-Enforcement Challenge ................ 1

II.    xAI Is Likely To Succeed On The Merits ....................................................... 2

        A.    A.B.2013 Violates the Takings Clause ................................................. 2

              1.    xAI holds trade secrets in its dataset information ..................... 2

              2.    A.B.2013 effects *per se* takings of xAI's trade secrets ............. 4

              3.    A.B.2013 effects regulatory takings of xAI's trade secrets ...... 5

              4.    Injunctive relief can prevent prospective takings violations .... 6

        B.    A.B.2013 Violates the First Amendment ............................................ 7

        C.    A.B.2013 Is Unconstitutionally Vague .............................................. 10

III.    The Equitable Factors Overwhelmingly Support Preliminary Relief ......... 12

CONCLUSION ....................................................................................................... 12

L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

xAI'S REPLY IN SUPPORT OF MOTION FOR    CASE NO. 2:25-cv-12295
PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*Abba Rubber Co. v. Seaquist*,
   286 Cal.Rptr. 518 (Cal. Ct. App. 1991) ............................................................. 3

*Agins v. City of Tiburon*,
   447 U.S. 255 (1980) ........................................................................................... 6

*Alford v. Walton Cnty.*,
   159 F.4th 844 (11th Cir. 2025) .......................................................................... 4

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
   916 F.3d 749 (9th Cir. 2019) ........................................................................... 10

*Armstrong v. United States*,
   364 U.S. 40 (1960) ............................................................................................. 4

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) .......................................................................... 12

*Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*,
   745 F.Supp.3d 1037 (C.D. Cal. 2024) ............................................................. 12

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021) ........................................................................................... 7

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ........................................................................... 12

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998) ........................................................................................... 7

*Foothills Christian Ministries v. Johnson*,
   148 F.4th 1040 (9th Cir. 2025) .......................................................................... 2

*Greater Phila. Chamber of Com. v. City of Phila.*,
   949 F.3d 116 (3d Cir. 2020) .............................................................................. 8

*Hodel v. Irving*,
   481 U.S. 704 (1987) ........................................................................................... 4

xAI'S REPLY IN SUPPORT OF MOTION FOR   CASE NO. 2:25-cv-12295
PRELIMINARY INJUNCTION

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ............................................................................................... 9

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*,
    512 U.S. 136 (1994) ............................................................................................. 10

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) ............................................................................... 11

*Kumar v. Koester*,
    131 F.4th 746 (9th Cir. 2025) ................................................................................ 1

*Lingle v. Chevron U.S.A., Inc.*,
    544 U.S. 528 (2005) ........................................................................................... 4, 6

*Lucas v. S.C. Coastal Council*,
    505 U.S. 1003 (1992) ............................................................................................ 4

*Matal v. Tam*,
    582 U.S. 218 (2017) ............................................................................................... 8

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................................... 9

*Milavetz, Gallop & Milavetz P.A. v. United States*,
    559 U.S. 229 (2010) ............................................................................................... 9

*Murr v. Wisconsin*,
    582 U.S. 383 (2017) ............................................................................................... 5

*NAACP v. Button*,
    371 U.S. 415 (1963) ............................................................................................. 11

*Nat'l Ass'n of Wheat Growers v. Bonta*,
    85 F.4th 1263 (9th Cir. 2023) ................................................................................ 9

*NIFLA v. Becerra*,
    585 U.S. 755 (2018) ............................................................................................. 10

*P&H Casters Co. v. P&H Indus.*,
    2025 WL 2995119 (C.D. Cal. July 18, 2025) ................................................. 8, 11

*Peace Ranch v. Bonta*,
  93 F.4th 482 (9th Cir. 2024)................................................................................2

*Pharm. Rsch. & Mfrs. of Am. v. Williams*,
  64 F.4th 932 (8th Cir. 2023)................................................................................7

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
  153 F.4th 795 (9th Cir. 2025).......................................................................*passim*

*Philip Morris v. Reilly*,
  312 F.3d 24 (1st Cir. 2002)..................................................................................6

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992)..............................................................................................8

*Riley v. Nat'l Fed'n of the Blind*,
  487 U.S. 781 (1988)..............................................................................................8

*Rodriguez Diaz v. Garland*,
  53 F.4th 1189 (9th Cir. 2022)..............................................................................4

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984)..............................................................................................5

*Selby Realty Co. v. City of San Buenaventura*,
  514 P.2d 111 (Cal. 1973)......................................................................................6

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..............................................................................................2

*United States v. Kirilyuk*,
  29 F.4th 1128 (9th Cir. 2022)..............................................................................4

*United States v. Trumbull*,
  114 F.4th 1114 (9th Cir. 2024)..........................................................................11

*United States v. Williams*,
  553 U.S. 285 (2008)............................................................................................11

*X Corp. v. Bonta*,
  116 F.4th 888 (9th Cir. 2024).........................................................................7, 8

*Zauderer v. Off. of Disciplinary Couns.*,
    471 U.S. 626 (1985) .......................................................................................... 9

*Zunum Aero, Inc. v. Boeing Co.*,
    2025 WL 2364602 (9th Cir. Aug. 14, 2025) ..................................................... 3

**Statutes**

Cal. Civ. Code §3111 ............................................................................................... 7

Cal. Civ. Code §3111(a)(2) ...................................................................................... 9

Cal. Civ. Code §3111(a)(9) ...................................................................................... 9

**Other Authority**

Scalia & Garner, *Reading Law* (2012) .................................................................. 11

# INTRODUCTION

The Attorney General's ("AG") defense of A.B.2013 confirms its invalidity. To develop cutting edge generative AI models, xAI must protect its trade secrets—including how much data it uses, where it sources its data, and the unique make-up of its datasets. A.B.2013 unconstitutionally forces xAI to disclose that information. None of the AG's arguments shows otherwise.

The AG claims that xAI lacks trade-secrets rights in its dataset information, but he makes no effort to rebut xAI's evidence showing the opposite. Nor does he contest the bottom line of xAI's takings claim: Forcing xAI to disclose dataset information under A.B.2013 would eviscerate (i.e., appropriate) its trade-secrets rights in that information. And he concedes that A.B.2013 discriminates based on viewpoint, which dooms his argument that it is subject to a lower First Amendment standard. Besides, A.B.2013 cannot withstand even that lower tier of scrutiny. Finally, while the AG insists that A.B.2013 is not vague, he never explains what the law covers or what detail it requires. When protected speech is at stake, due process demands far more clarity than that.

With no persuasive argument on the merits, the AG presses threshold arguments about standing and the availability of injunctive relief. Both are unavailing. In reality, A.B.2013 flouts multiple constitutional provisions, and xAI plainly merits equitable relief. This Court should enjoin A.B.2013's enforcement.

# ARGUMENT

## I. xAI Has Standing To Maintain This Pre-Enforcement Challenge.

A plaintiff has standing to bring a pre-enforcement challenge if he faces "a credible threat of prosecution." *Kumar v. Koester*, 131 F.4th 746, 752 (9th Cir. 2025). The AG insists that xAI has failed to establish a credible threat of

prosecution. But that issue "rises or falls with the enforcing authority's willingness to disavow enforcement." *Peace Ranch v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024). And here, the AG has not disavowed enforcement of A.B.2013—either generally or specifically against xAI. xAI plainly has standing, as "a failure to *disavow* … is sufficient to establish a credible threat of prosecution" under a newly enacted statute. *Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1050 (9th Cir. 2025).

xAI's good-faith, precautionary effort to provide a limited disclosure under A.B.2013 that protects its trade secrets does not alter the analysis. As xAI explained, there remains a substantial risk that the AG will deem that disclosure insufficient under A.B.2013 and compel additional disclosures in violation of xAI's constitutional rights. *See* Mot.9 n.1. After all, if the AG thinks that xAI's limited disclosures suffice to satisfy its obligations under A.B.2013, then he could have said so. Instead, his "briefing diligently avoids taking a stance" on that question. *Peace Ranch*, 93 F.4th at 490. xAI need not wait until the AG decides to sue to challenge the law. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). And the AG cites no authority for his meritless claim that xAI must "avoid any compliance with A.B.2013 whatsoever" to maintain a pre-enforcement challenge. Opp.6.

## II. xAI Is Likely To Succeed On The Merits.

### A. A.B.2013 Violates the Takings Clause.

#### 1. xAI holds trade secrets in its dataset information.

The AG first disputes whether xAI holds trade-secrets property rights in the dataset information subject to disclosure under A.B.2013. But as xAI explained, information regarding how it decides what information to use to train its AI models is economically valuable precisely because its rivals are unaware and thus cannot replicate xAI's success. Mot.11-12. And xAI's unrebutted evidence shows in detail

that disclosures under A.B.2013 would be economically damaging because competitors have the technical knowledge and wherewithal to use even partial information about xAI's datasets to work backwards, ascertain where their training is deficient, and thereby improve their own models. Stanley.Decl.¶¶9, 11, 20-25. xAI thus has a substantial economic interest in preventing its rivals from gaining even limited insight into its datasets and training methods. *See Abba Rubber Co. v. Seaquist*, 286 Cal.Rptr. 518, 527 (Cal. Ct. App. 1991).

The AG never grapples with the evidence xAI submitted. He claims that xAI lacks trade-secrets rights because it never declared that "it uses unique or unknown data sets" or that disclosing a range of datapoints would reveal unknown datasets. Opp.9. But as xAI's declaration shows, the make-up of each dataset *is* the protected trade secret. Mot.4; Stanley.Decl.¶24. So whether some of the sources that xAI draws from are generally known misses the point. If xAI disclosed what data is in each dataset or how much data is used during the training process, competitors could reconstruct its unique training datasets and replicate its models. Stanley.Decl.¶¶21, 24. Hence, detail about xAI's cleaning process (key to deciding what training data to use) is also a protected trade secret, *contra* Opp.10; competitors' knowledge of such information would reveal what data xAI considers most effective and how "to mimic those methods." Stanley.Decl.¶25. Given this detailed explanation, the AG's suggestion that xAI's evidence is "vague" and "conclusory" is inexplicable. Opp.9. xAI is not required to "precisely define the boundaries of each claimed trade secret" to establish that it is protected. *Zunum Aero, Inc. v. Boeing Co.,* 2025 WL 2364602, at *1 (9th Cir. Aug. 14, 2025).[1]

---

[1] The AG never disputes that xAI endeavors to keep all of this information secret.

xAI'S REPLY IN SUPPORT OF MOTION FOR     CASE NO. 2:25-cv-12295
PRELIMINARY INJUNCTION

### 2. A.B.2013 effects *per se* takings of xAI's trade secrets.

The AG next claims that xAI's *per se* takings claim is foreclosed by *Pharmaceutical Research & Manufacturers of America v. Stolfi*, 153 F.4th 795 (9th Cir. 2025). Opp.10-11. But *Stolfi* addressed a takings claim predicated only on the alleged loss of all economic value in the plaintiff's trade secrets. 153 F.4th at 833 (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)). It never analyzed the "different *per se* rule," *Alford v. Walton Cnty.*, 159 F.4th 844, 855 n.6 (11th Cir. 2025), that xAI has raised here: that A.B.2013's disclosure obligations effect a *per se* taking by appropriating xAI's right to exclude, *see* Mot.13-14. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005) (treating these analyses as distinct). *Stolfi* also dealt with a facial takings challenge, and its analysis relied on the fact that "the economic impact of a disclosure will likely vary case by case." 153 F.4th at 833. Here, xAI argues that A.B.2013 violates the Takings Clause only as applied to xAI.[2] *Stolfi* does not govern xAI's as-applied *per se* claim. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022).

The AG next argues that *per se* claims are limited to seizure of physical property—not intangible property. *See* Opp.10-11. A long line of cases proves otherwise. *See, e.g.*, *Hodel v. Irving*, 481 U.S. 704, 715-17 (1987) (*per se* taking when government "destroyed" the right to devise, an "essential stick[] in the bundle of [property] rights," without physically seizing property); *Armstrong v. United States*, 364 U.S. 40, 48-49 (1960) (categorical taking of *intangible* property when plaintiffs could not vindicate their rights in liens). The Takings Clause has long

---

[2] The AG insists that xAI seeks to facially invalidate A.B.2013. Opp.11-12. But xAI's takings claim "focuses on [its] application to [xAI]"; xAI has never argued that A.B.2013 would necessarily appropriate all other developers' property rights. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022).

- 4 -

protected both tangible and intangible property from categorical government appropriations. By eviscerating xAI's right to exclude the public from accessing its trade secrets, A.B.2013 does just that. *See* Mot.13-14.

### 3. A.B.2013 effects regulatory takings of xAI's trade secrets.

The AG fares no better contesting xAI's showing under *Penn Central*. He claims A.B.2013 does not interfere with any investment-backed expectations because xAI lacks trade-secrets rights and "should have expected" "increased regulatory scrutiny" given the public interest in AI. Opp.12-13. But states do not have a free hand to alter property rights after the fact, yet avoid takings review. *Murr v. Wisconsin*, 582 U.S. 383, 396 (2017). The AG concedes that California has not regulated in this area before. He cannot use the public's general interest in AI to immunize the state from liability for destroying xAI's trade secrets. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011-12 (1984) (regulation denying preexisting trade-secrets rights upset investment-backed expectations).

The AG suggests that xAI has not shown that A.B.2013 will have a severe economic impact, since revealing information about an individual dataset (such as how much synthetic data is used) would not reveal any trade secrets. Opp.13-14. Even assuming that is all A.B.2013 requires, that ignores the evidence. As xAI's declarant explains, xAI seeks to keep details of its training datasets secret because if a competitor knew *what* data xAI uses for training and *when*, it could improve different parts of its own training regimen to undercut xAI's competitive edge. Stanley.Decl.¶¶21-25. So even if xAI is not forced to reveal its entire development process, it still faces the risk that competitors will be able to use information about that process to improve each step of their own data collection, curation, and training processes to replicate xAI's success. *See* Mot.16-17. The economic impact of

- 5 -

1  xAI's competitors acquiring the requisite information to do *that* is "potentially
2  tremendous." *Philip Morris v. Reilly*, 312 F.3d 24, 41 (1st Cir. 2002) (en banc).

3  That leaves the AG's contention that the character of government action
4  weighs against a taking because A.B.2013 advances an important public purpose.
5  Opp.14-15. For starters, that formulation is no longer good law. *See Lingle*, 544
6  U.S. at 548 (overruling the part of *Agins v. City of Tiburon*, 447 U.S. 255 (1980),
7  the AG cites). Regardless, the AG fails to explain how A.B.2013 advances public
8  transparency. He never refutes xAI's evidence that disclosures about an AI model's
9  inputs do not help consumers who care about *outputs*.[3] Stanley.Decl.¶26. To the
10 contrary, his example about antisemitic posts (i.e., outputs) only underscores the
11 point. Opp.15. And while a disclosure requirement that allowed for confidentiality
12 designations, or case-specific findings that disclosure is necessary, could perhaps
13 survive a takings challenge, *cf. Stolfi*, 153 F.4th at 839-40, A.B.2013 has none of
14 those safeguards. Its categorical demand that xAI disclose dataset information
15 without concern for property rights has all the trappings of a regulatory taking.

16  **4.  Injunctive relief can prevent prospective takings violations.**

17  Recognizing that the merits weigh decisively against him, the AG posits that
18 xAI cannot obtain injunctive relief to prevent a future taking. Opp.7-8. That is not
19 the law. True, California's inverse-condemnation action enables property owners
20 to recover compensation in some circumstances, but that provision applies only
21 after a taking occurs, *not before*. *Selby Realty Co. v. City of San Buenaventura*, 514
22 P.2d 111, 119-20 (Cal. 1973). Since A.B.2013 "authorizes a repetitive … series of
23 new, *per se* takings," xAI would need to "repeatedly bring new suits to obtain just

---

[3] The AG also never responds to xAI's argument that A.B.2013 flunks the Takings Clause's "public use" requirement. Mot.18.

compensation"—"precisely the sort of legal inadequacy that would make equitable relief" available. *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 942 (8th Cir. 2023). An inverse-condemnation action is not an adequate remedy for A.B.2013's repetitive threat of future takings. *E. Enters. v. Apfel*, 524 U.S. 498, 521-22 (1998) (plurality). That is why the Supreme Court in *Cedar Point Nursery v. Hassid* never doubted that the plaintiffs there could seek injunctive relief to avert a future taking. 594 U.S. 139, 145 (2021). So too here. xAI can seek preliminary injunctive relief against the AG enforcing A.B.2013 and taking its trade secrets.

**B.     A.B.2013 Violates the First Amendment.**

As for xAI's First Amendment claim, the AG never disputes that A.B.2013 compels xAI's speech or that it flunks strict scrutiny. He instead insists that A.B.2013 should be analyzed under *Zauderer* because it compels the disclosure of commercial speech. That cannot be squared with governing law.

For starters, the disclosures required by A.B.2013 do not involve commercial speech because they do not "propose a commercial transaction." *Stolfi*, 153 F.4th at 819-20. To assess if speech is commercial, the Ninth Circuit considers if (1) the speech is "an advertisement"; (2) it "refers to a particular product," and (3) "the speaker has an economic motivation." *X Corp. v. Bonta*, 116 F.4th 888, 900 (9th Cir. 2024). The disclosures here have none of those characteristics. They involve documents xAI must post on its website, not advertisements. xAI has no economic motivation to make the disclosures; in fact, revealing such information is extremely economically damaging. Stanley.Decl.¶¶22-29. And while A.B.2013 relates to AI models generally, the disclosures do not "communicate the terms of potential commercial transactions" nor are "tethered to commercial transactions." *Stolfi*, 153 F.4th at 821; *see* Cal. Civ. Code §3111 (A.B.2013 applies "regardless of whether

the terms … include compensation"). As the Ninth Circuit explained, compelled disclosure of reports on companies' "content-moderation practices in language prescribed by the State" has "few indicia of commercial speech." *X*, 116 F.4th at 901. The same holds true for A.B.2013's compelled disclosures about xAI's dataset information. Given xAI's non-commerical speech is at stake, A.B.2013 necessarily triggers strict scrutiny. Indeed, as a long line of cases confirm, laws like A.B.2013 are "content-based 'compelled speech' requirement[s] subject to strict scrutiny" because they dictate the content of speech, *Stolfi*, 153 F.4th at 810—even if that content is purely factual, *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795 (1988).

Even if A.B.2013 regulated commercial speech, it would still trigger strict scrutiny. Far from contesting that A.B.2013 constitutes viewpoint discrimination by exempting systems with favored purposes and targeting data California views as "riddled with … biases," Mot.20, the AG embraces the position. He confirms that California enacted A.B.2013 to address models "perpetuat[ing]" or "amplify[ing] biases"—*i.e.*, viewpoints the state disfavors. Opp.2. That is a concession that A.B.2013 discriminates on the basis of viewpoint. *See P&H Casters Co. v. P&H Indus.*, 2025 WL 2995119, at *4 (C.D. Cal. July 18, 2025). Laws that discriminate based on viewpoint trigger strict scrutiny, even if (unlike here) commercial speech is at issue. *See Matal v. Tam*, 582 U.S. 218, 251 (2017) (Kennedy, J., concurring); *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 139 (3d Cir. 2020); *Dana's R.R. Supply v. Att'y Gen.*, 807 F.3d 1235, 1248 (11th Cir. 2015).[4]

If this Court nevertheless applies a lower tier of scrutiny, it should apply

---

[4] Indeed, regulations of speech not otherwise protected by the First Amendment still trigger strict scrutiny if they discriminate on the basis of viewpoint. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 391-92 (1992) (government cannot ban "fighting words" for only "specified disfavored topics").

intermediate scrutiny, not the narrow exception for misleading commercial speech set forth in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985). The Supreme Court has never applied *Zauderer* outside the context of correcting misleading advertising, and rightfully so, as it is specially aimed at "combat[ing]" the unique problems of "misleading commercial advertisements." *Milavetz, Gallop & Milavetz P.A. v. United States*, 559 U.S. 229, 250 (2010); *see Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995). Because states can ban misleading advertising outright, compelled disclosures of factual information "trench much more narrowly on an advertiser's interests than do flat prohibitions on speech"—justifying a lower tier of scrutiny. *Zauderer*, 471 U.S. at 651. That reasoning does not apply to A.B.2013, which forces xAI to disclose its fiercely protected trade secrets, not to correct misleading advertising. Moreover, A.B.2013 could not even satisfy *Zauderer*, as it compels disclosure of information that is not "purely factual and uncontroversial." *Id.* It requires xAI to explain "the intended purpose" of any "cleaning, processing, or other modification to [its] datasets." Cal. Civ. Code §3111(a)(2), (9). That is not an "objective, factual inquir[y]," *contra* Opp.18; it reveals xAI's subjective (and confidential) "internal strategies," *Stolfi*, 153 F.4th 825 n.25; *see* Stanley.Decl.¶25.

Under intermediate scrutiny, A.B.2013 is plainly not "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The AG does not contest that what ultimately matters to consumers is the effectiveness of an AI model's outputs. *See supra* p.6. Yet A.B.2013 does not require developers to disclose how their models perform—an actual metric for boosting consumer confidence. *See Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023) (law fails intermediate scrutiny if there are "other

means to promote" state's objective). Rather, A.B.2013 forces them to disclose extensive confidential information about their data *inputs*. The AG claims that some of this information "*might* raise concerns for consumers," or that consumers "*may* find it useful." Opp.21 (emphases added). But speculative *ipse dixit* is hardly proof that A.B.2013 is sufficiently tailored to the harms it purports to address or will "alleviate them to a material degree," *Stolfi*, 153 F.4th at 827—particularly when *unrebutted* evidence shows the opposite, *see* Stanley.Decl.¶26. That A.B.2013 applies to any AI model released since 2022, even if consumers no longer use it, confirms the lack of narrow tailoring—an issue the AG conveniently ignores.

For similar reasons, A.B.2013 falls short under *Zauderer*, as it is plainly "unjustified or unduly burdensome" and extends "broader than reasonably necessary." *NIFLA v. Becerra*, 585 U.S. 755, 776 (2018). The state has not offered any evidence to carry its burden of showing that A.B.2013 is necessary to address a "harm that is potentially real, not purely hypothetical." *Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*, 512 U.S. 136, 146-47 (1994) (compelled disclosure rule failed *Zauderer*, given lack of evidence that it was needed to avert harm). Rather, as xAI's unrebutted evidence shows, A.B.2013 does not meaningfully advance the state's asserted consumer-transparency interest. *See supra* pp.6, 9-10. There can be little doubt then that the state "would accomplish [its] stated goals" with less burdensome disclosure obligations that focus on a model's *outputs*. *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757 (9th Cir. 2019). In fact, those disclosures would be *more* effective at addressing user concerns. *See* Stanley.Decl.¶¶5, 26. In short, A.B.2013 flunks any applicable standard of First Amendment scrutiny.

### C. A.B.2013 Is Unconstitutionally Vague.

On vagueness, the AG relies on the wrong standard, mischaracterizes xAI's

arguments, and fundamentally misunderstands the doctrine.

The AG posits that A.B.2013 should receive "less exacting … scrutiny," Opp.22, but his concession that A.B.2013 implicates xAI's First Amendment rights confirms otherwise. After all, with speech rights at stake, California must regulate "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). The AG's opposition devolves from there. He never addresses xAI's argument that A.B.2013 "invite[s] arbitrary enforcement" because the required disclosures are not limited to just the enumerated list. Mot.23 (citing *Kashem v. Barr*, 941 F.3d 358, 364 (9th Cir. 2019)). Nor does he dispute that A.B.2013 leaves developers guessing whether it covers only training datasets or all datasets sourced. Mot.23. The AG thus concedes both points. *See P&H Casters*, 2025 WL 2995119, at *4.

The AG asserts that the term "high-level summary" is not vague since it has a "commonsense meaning." Opp.22. But he confuses ambiguity with vagueness. A term is ambiguous if "two or more meanings applies"; it is vague if its "meaning has uncertain application to various factual situations." Scalia & Garner, *Reading Law* 32 (2012); *see United States v. Trumbull*, 114 F.4th 1114, 1124 (9th Cir. 2024) (Bea, J., concurring). Put differently, A.B.2013 is not vague because "high-level summary" lacks a plain meaning; it is vague because the commonsense meaning of "high level summary" is too indeterminate to provide xAI "fair notice" as to what disclosures are required. *United States v. Williams*, 553 U.S. 285, 304 (2008). So too for "dataset" and "data point." Those terms do not sufficiently explain what they cover. Mot.22. The dictionary definitions the AG cites are entirely unresponsive; they may provide *one* possible meaning for those terms, but they do not resolve the inherent vagueness over how they apply to a real-world developer attempting to comply with A.B.2013.

### III. The Equitable Factors Overwhelmingly Support Preliminary Relief.

The AG does not deny that xAI faces irreparable harm from the deprivation of its constitutional rights, the loss of its trade secrets, and unrecoverable compliance costs. *See* Mot.24. But he argues that xAI's delay in seeking relief erases that obvious harm. There was no actual delay here. xAI sued *before* A.B.2013 took effect and filed its preliminary-injunction motion shortly after. At any rate, "delay is but a single factor to consider in evaluating irreparable injury"; it is not a "determinative" one, and "courts are loath to withhold relief solely on that ground." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Here, any delay "is not particularly probative" since xAI stands to suffer "ongoing" constitutional injuries. *Id.*; *Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1069 (C.D. Cal. 2024) (irreparable harm for loss of constitutional rights despite two-year delay). The irreparable harm xAI would face under A.B.2013 accordingly is unassailable. As to the balance of equities, the AG claims that they favor California, as it would be harmed if its law is enjoined. Opp.24. But that disregards the reality that California suffers no harm when it is "enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). All factors thus favor equitable relief.

And while injunctive relief generally must be tailored, Opp.24-25, xAI has argued that A.B.2013 is facially vague. The proper remedy for that constitutional injury is an injunction enjoining enforcement of all of A.B.2013's provisions.[5]

### CONCLUSION

The Court should grant xAI's motion.

---

[5] xAI does not take issue with a limited injunction "solely preventing" the AG from enforcing A.B.2013 to compel xAI to make additional disclosures. Opp.24.

Respectfully submitted,

s/Adam S. Sieff
ADAM S. SIEFF (Cal. Bar #302030)
DAVIS WRIGHT TREMAINE LLP
350 S. Grand Avenue, 27th Floor
Los Angeles, CA 90071
Tel.: (213) 633-8618
adamsieff@dwt.com

ERIN E. MURPHY (*pro hac vice*)
JAMES Y. XI (*pro hac vice*)
MITCHELL K. PALLAKI (*pro hac vice*)
ILAN J. POSNER (*pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
Tel.: (202) 742-8900
erin.murphy@clementmurphy.com
matthew.rowen@clementmurphy.com
james.xi@clementmurphy.com
mitchell.pallaki@clementmurphy.com
ilan.posner@clementmurphy.com

*Attorneys for Plaintiff X.AI LLC*

February 9, 2026

- 13 -

xAI'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION              CASE NO. 2:25-cv-12295

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff X.AI LLC, certifies that this brief contains 12 pages, which complies with the page limit set by this Court's Standing Order (ECF No. 23).

Dated: February 9, 2026

s/Adam S. Sieff
ADAM S. SIEFF
DAVIS WRIGHT TREMAINE LLP

*Counsel for Plaintiff X.AI LLC*